William Charles BALLARD,
Plaintiff-Appellee,

v.

Sheriff SPRADLEY, Lake City,
Florida, Defendant.

Joey ADAMS, Plaintiff-Appellee,

v.

J. C. COMBS, Inspector, and G. S. Fortner, Superintendent, Defendants.

Stephen John FUNDAK, Jr.,
Plaintiff-Appellee,

v.

Louie L. WAINWRIGHT, Defendant.

William JENNINGS, Jr.,
Plaintiff-Appellee,

v.

G. S. FORTNER, Superintendent, Florida State Prison, and Col. M. R. Hicks, Chief Correctional Officer, Div. of Corrections, Defendants.

John L. HUTCHINS, Plaintiff-Appellee,

v.

Sgt. COWARD, Officer Crews, Officer M. L. Lee, Officer S. L. Smile, and Sgt. Fletcher, Defendants.

Appeal of UNITED STATES
MARSHAL SERVICE.

Nos. 76–3182 to 76–3186.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1977.

John L. Briggs, U. S. Atty., Robert A. Leventhal, Asst. U. S. Atty., Jacksonville, Fla., J. Jerome Bullock, Associate Legal Counsel, Gerald M. Auerbach, Assoc. Legal Counsel, Washington, D. C., for plaintiffs-appellees in all cases.

John T. Chandler, Gainesville, Fla., Robert L. Shevin, Atty. Gen. of Fla., Dept. of Legal Affairs, Mary Jo Carpenter, Thomas M. Beason, Joseph W. Lawrence, II, Asst. Attys. Gen., Tallahassee, Fla., for defendants in all cases.

Julius F. Parker, Jr., Tallahassee, Fla., for Spradley.

Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

CLARK, Circuit Judge:

The United States Marshals Service appeals from an order requiring a local marshal to transport state prisoner-plaintiffs to the district court so that they may testify in pending 42 U.S.C. § 1983 actions. The order contemplates that each state prisoner will be transferred by the State of Florida from his regular place of incarceration to a local county jail. The marshal is directed to then take custody of the prisoners at the jail, transport them to the district court, and return them to the jail after trial. We hold that appellate jurisdiction exists to review the district court's order and that the marshal is required to carry out the district court's order.

I. Factual and Procedural Background

Eight inmates of the Florida Department of Offender Rehabilitation, who were incarcerated at state prisons in Starke or Raiford, Florida, filed 42 U.S.C. § 1983 complaints with the district court. When the district court determined that presence of the prisoners was necessary to the conduct of a non-jury trial on their complaints, it initially ordered the State of Florida to deliver each prisoner to a designated pretrial conference or trial, to maintain them during the course of the proceedings, and to return them to their place of confinement at the conclusion of the proceedings. Florida objected to this order.

The district court held a hearing on Florida's objection which was attended by a representative for the State of Florida and a United States marshal. The marshal contested the issuance of any order which would direct him to produce or maintain the prisoner-witnesses. At the conclusion of this hearing, the district court requested Florida and the local marshal to attempt to reach a compromise in the matter.

When these officials failed to agree, the district court issued writs of *habeas corpus ad testificandum* to both the State of Florida and the marshal. These writs ordered Florida to deliver 6 prisoners into the custody of the marshal.[1] It also directed the

* Senior District Judge of the Eastern District of Virginia, sitting by designation.

1. By the time the district court had entered its April 9, 1976 order, two of the prisoners had been released from custody. The original writs issued by the district court as to these two prisoners were quashed in its April 9, 1976 order. Since this appeal was taken, another prisoner's 42 U.S.C. § 1983 complaint was dismissed. This appeal treats the procedures involving the 5 remaining prisoners only.

marshal to bring the prisoners before the court so that they might appear and testify on a certain date and, upon the prisoners' discharge as witnesses, to return them to Florida's custody. The marshal filed a timely notice of appeal from this order and moved to stay execution of the writs pending appeal. The district court granted the stay.

## II. Appealability

■ In seeking a reversal of the district court's order, the United States Marshals Service styles its request as an appeal from that order under 28 U.S.C. § 1291 or, in the alternative, as a petition for mandamus under *id.* § 1651(a). Our determination that this case falls within the "collateral order doctrine" set forth by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), renders it unnecessary to determine the validity of its petition for mandamus.

The *Cohen* doctrine embraces "that small class [of interlocutory orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. 1225–26. That the order is final is patent from the district court's refusal to vacate or modify the writ after having conducted a second hearing on the matter at which representatives of Florida and the United States Marshals Service appeared. The writ of *habeas corpus ad testificandum* is unrelated to the merits of the 42 U.S.C. § 1983 claims, and our review now will not be duplicated at a later time. *Hitt v. Nissan Motor Co. (In re Nissan Motor Corp. Antitrust Litigation)*, 552 F.2d 1088, 1095 (5th Cir. 1977). Finally, this appeal raises important questions concerning the authority of the federal courts to issue the writ in question and the concomitant responsibilities of the United States Marshals Service when that authority is directed to

its employees. Immediate consideration of these issues will ensure that the benefits which flow to the district court and the parties from use of writ will be realized. *See Abney v. United States,* —— U.S. ——, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

## III. Appellate Contentions

The Marshals Service argues that the district court abused its discretion in requiring the federal authorities to assume sole responsibility for the civil plaintiffs from the time they depart the State prisons until their return. More specifically, it contends that the district court failed to consider that Florida, rather than the Marshals Service, has the greater interest in the outcome of these actions and that it should bear a greater portion of the attendant costs and responsibilities. It points out that because the prisoner-witnesses are in Florida's custody, it has a paramount interest in them even when they are temporarily required to be present in a federal court, that Florida has a vital concern in these suits filed against its prison authorities, that it has as keen an interest in upholding the United States Constitution as the federal government, and that therefore it should not be relieved of any responsibilities attendant to these suits, be they custodial, financial, or the like. Finally it argues that the Marshals Service will suffer greater hardships than Florida if required to produce the prisoner-plaintiffs because of the inadequate size of its staff and its lack of authority to expend the funds required for compliance with the anticipated volume of such orders.

## IV. The Writ of Habeas Corpus Ad Testificandum

■ Precedent for the district court's use of the writ of *habeas corpus ad testificandum* to command the presence of these witnesses is steeped in history. Judge Blackstone describes habeas corpus as "the most celebrated writ in the English law. Of these there are various kinds made use of by the courts at Westminster, for removing

prisoners from one court into another, for the easy administration of justice." 3 Commentaries * 129. The writ of *habeas corpus ad testificandum*, issued to secure the presence of a prisoner at trial for testimony, is among those listed. *Id.* * 130. Congress authorized federal courts to issue writs of habeas corpus in the Judiciary Act of 1789, c. 20, § 14, 1 Stat. 81–82, and Mr. Justice Marshall, in *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 98–99, 2 L.Ed. 554, 562 (1807), citing 3 W. Blackstone, Commentaries * 129–30, interpreted this section to encompass the authority to issue writs of *habeas corpus ad testificandum*. In *Ex parte Dorr*, 44 U.S. (3 How.) 103, 105, 11 L.Ed. 514, 515 (1845), the United States Supreme Court concluded that the federal court's authority to issue the writ to secure the testimony of prisoners extended to those persons in custody under a sentence or execution of a state court. *See also Adams v. United States*, 423 F.Supp. 578 (E.D.N.Y.1976). (Writ of *habeas corpus ad testificandum* issued to secure state prisoner's testimony before a United States Grand Jury.)

■ District courts are expressly granted the power to issue the writ of *habeas corpus ad testificandum* today. 28 U.S.C. § 2241(c)(5).[2] The decision to issue the writ rests within the discretion of the district court. *Malinauskas v. United States*, 505 F.2d 649, 655–56 (5th Cir. 1974); *United States v. Hathcock*, 441 F.2d 197, 199–200 (5th Cir. 1971); *Ball v. Woods*, 402 F.Supp. 803, 808 (N.D.Ala.1975), *aff'd without opinion sub nom., Ball v. Shamblin*, 529 F.2d 520 (5th Cir. 1976).

■ During the past several years, the number of prisoners' petitions for writs of habeas corpus and civil rights complaints in the federal courts has increased dramatically.[3] This court has urged district courts to develop "imaginative and innovative methods of dealing with the flood of prisoner complaints and suits, most of which are brought under [42 U.S.C. §] 1983 and filed in forma pauperis." *Taylor v. Gibson*, 529 F.2d 709, 717 (5th Cir. 1976). (Footnote omitted.) *See generally Covington v. Cole*, 528 F.2d 1365, 1373 n.19 (5th Cir. 1976); *Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976); Federal Judicial Center, Recommended Procedures For Handling Prisoner Civil Rights Cases In The Federal Courts (Tentative Report No. 2, May 20, 1977).

While certain of these actions may be dismissed without requiring a hearing, when the file and record require the district court to make credibility choices, the petitioner is entitled to a day in court with live testimony. *Taylor v. Gibson*, 529 F.2d at 709. This does not mean, of course, that the petitioner's presence will be required, however. When determining whether it should issue a writ of *habeas corpus ad testificandum* in such instances, the district court must exercise its discretion based upon consideration of such factors as whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted. *See Ball v. Woods*, 402 F.Supp.

---

**2.** 28 U.S.C. § 2241(c)(5) also authorizes the federal district courts to issue writs of *habeas corpus ad prosequendum*, used to remove a prisoner to the proper jurisdiction in order to prosecute him. For a discussion which traces the federal statutory history of these two writs, see *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). *See generally* R. Sokol, Federal Habeas Corpus § 4.5, App. D (2d ed. 1969).

**3.** In fiscal 1976, approximately 15,029 state prisoner petitions were commenced in the United States District Courts. Of this total, 4,774, or 31.76%, were filed in district courts within

this circuit. Of these, 1,090, or 22.83%, were filed in the Middle District of Florida. Administrative Office of the United States Courts, Annual Report of the Director (1976).

In fiscal 1970, approximately 11,812 state prisoner petitions were commenced in the United States District Courts. Of this total, 2,079, or 17.60%, were filed in district courts within this circuit. Of these, 575, or 27.66%, were filed in the Middle District of Florida. Administrative Office of the United States Courts, Annual Report of the Director (1970).

Each year these filings constitute a significant percent of the federal courts' case load.

803, 808–09 (N.D.Ala.1975), *aff'd without opinion sub nom., Ball v. Shamblin*, 529 F.2d 520 (5th Cir. 1976). The court should not base the exercise of its discretion on the probability that a prisoner will succeed on the merits of the claim or a presumption that the correctional institution has acted correctly with regard to the prisoner's complaint. *See Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir. 1976). These factors are inappropriate because they focus on the ultimate result of the action rather than the need for the prisoner's testimony vis-à-vis the difficulties attendant to securing it. Should other considerations be present which cause a district court to conclude that the writ should not issue, a stay of the action may be appropriate.

We are unpersuaded by the argument of the Marshals Service that the district court improperly allocated the responsibilities of transferring the prisoners from the state prisons to the district court. It was altogether reasonable to allot Florida the responsibility of transporting the prisoners from their place of state incarceration to a county jail convenient to the place of trial, and to the Marshals Service the responsibility for transporting them from the local jail to the federal courthouse, providing courtroom security, and returning them to the local jail. While we agree that Florida has a real interest in the defense of these actions, the district court's procedures assign to it a significant amount of the overall responsibility, costs of transportation, and safekeeping. We expressly reject the Marshals Service's contention that the interests of Florida so outweigh those of the federal government that Florida should be required to bear complete responsibility for the prisoners' transportation. The rights invoked are federal in nature, and prisoners' habeas and civil rights actions play an equal, vital role of "importance in our constitutional scheme . . . ." *Wolff v. McDonnell*, 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974).

The *raison d' etre* of the Marshals Service is to service the federal forum in civil as well as criminal litigation. Congress has directed that marshals may, in the discretion of the district court, where they are located, "be required to attend any session of court * * * execute all lawful writs . . . and command all necessary assistance to execute their duties." 28 U.S.C. § 569(a), (b). The Marshals Service argues that it lacks the funds to transport and return the expected influx of state prisoner-witnesses such as these, a factor which the district court considered in assessing whether the writ should issue. The cases cited for this proposition rely on *Diaz v. Chatterton*, 229 F.Supp. 19, 22–23 (S.D.Cal. 1964). We are unpersuaded by *Diaz*. Its conclusion that funds are not available is unsupported. 28 U.S.C. § 567 and 28 C.F.R. §§ 0.111(b); (i), 0.138a, 0.142 (1976), provide ample authority for the payment of expenses incurred in carrying out these duties. If specifically appropriated funds are not available, the Marshals Service may be able to meet the expense from contingency funding; at least it has not shown this is impossible. Should the volume of this type of litigation *actually* become so great that the fiscal or physical burdens render compliance impossible, the Marshals Service may always make such a showing to the district court in an application for modification or relief and request that the trial be stayed until it is able to comply with the writ. What it cannot do is to excuse the performance of its duty by *projecting* a burden. Once the district court has determined that the prisoner's presence is essential, the possibility that a lack of transportation funds or personnel will develop is no justification for refusing to issue the writ. *See Ball v. Woods*, 402 F.Supp. at 810.

The order appealed from is

AFFIRMED.