Stanton STORY, George Brooks, Robert Joyner, Louis McLemore and Larry Howard, individually and on behalf of all others similarly situated, Plaintiffs,

v.

William B. ROBINSON, Commissioner of Bureau of Corrections, et al., Defendants.

Civ. A. No. 77–1204.

United States District Court, W. D. Pennsylvania.

Feb. 3, 1982.

Stanton Story, pro se.

William A. Webb, Deputy Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

This is a civil rights action brought in this court under 42 U.S.C. § 1983 and 28 U.S.C.

§ 1343. The plaintiffs in this action are inmates in a State Correctional Institution. In their complaint the plaintiffs allege that the defendants, state prison officials, have violated and continue to violate the plaintiffs' constitutional rights under the First, Eighth and Fourteenth Amendments.[1] As a remedy for these alleged constitutional violations the plaintiffs demand wide-ranging injunctive relief and monetary damages.

On October 14, 1977, the plaintiffs were granted leave to proceed in forma pauperis and this matter was assigned to the United States Magistrate for all further proceedings. Extensive trial proceedings have been conducted in this case, all under the supervision of the Magistrate.

Recently, however, a dispute has arisen between two intervenors in this action—The Commonwealth of Pennsylvania and the United States Marshal's Service. This dispute centers around the costs associated with the transportation of state prisoners to court appearances. Because this dispute may have a direct impact on all prisoner civil rights cases brought in this district we felt that the court, rather than the Magistrate, should address it in the first instance. Accordingly we ordered this case assigned to the court for determination of this issue alone.

Historically in this district the costs of transporting state prisoners to federal court have been allocated in the following manner: The state, at its own expense, would transport the prisoner from the institution currently holding him to the jail nearest the Federal Courthouse. The state would then notify the Marshal's Service that the prisoner was available for court appearances. It was then the responsibility of the Marshal to transport the prisoner to the United States Courthouse; hold him while at the Courthouse; and return him to the state authorities when his presence was no longer required in federal court.

---

1. The plaintiffs' complaint describes the specifics of these alleged violations in great detail. Because we are not now concerned with the merits of any of these claims we do not set them forth in any detail. Generally, however, the plaintiffs attack the manner in which prison officials discipline inmates and the physical conditions of their confinement.

It was our belief that this procedure brought state prisoners into federal court in an efficient cost-effective manner. Moreover, under this scheme the costs of transporting state prisoners were divided equitably between the state and federal governments. Finally, this system had the virtue of being one that was mutually agreed upon by both the state authorities and the Marshal's Service. In short, this procedure was an excellent example of what could be achieved when state and federal officials cooperated to solve a common problem.

That spirit of cooperation ended abruptly, however, in October of 1981 when the United States Marshal's Service intervened in this action. Arguing that it could no longer undertake the responsibility of transporting state prisoners, the Marshal's Service asked this court to direct the Commonwealth to assume all of the costs of transporting prisoners in civil rights cases. The Commonwealth has responded by also intervening in this action. The Commonwealth requests that we refuse to issue any writs of habeas corpus ad testificandum which require the state to bear the entire cost of transporting state prisoners to federal court for court appearances.

The motions presented by the intervenors raise the same fundamental question: namely, in civil rights cases how should the costs of transporting indigent state prisoners and their prisoner witnesses to federal court be allocated? The intervenors have thoroughly briefed and argued this issue. Accordingly, this matter is now ripe for our resolution.

In discussing the allocation of these costs we feel that a few observations are appropriate at the outset. While the issue presented by these intervenors is rather narrow, it is symptomatic of a widespread administrative problem in the federal court system. In the past decade federal courts have experienced a dramatic increase in prisoner civil rights case filings.

These prisoner civil rights cases create unique and significant challenges for federal district courts; almost invariably the plaintiffs in these actions seek, and are granted, leave to proceed in forma pauperis. As a result the costs associated with much of this litigation must be borne by the United States. These cases necessarily impose substantial burdens on the judicial system. These burdens are further exacerbated, however, because the vast majority of these cases deal with the civil rights petitions of state prisoners.

Moreover, we recognize that the judicial resources available to assist the federal courts in processing prisoners' civil rights complaints are quite limited. Inevitably, as the costs associated with this litigation become greater, there is an increasing reluctance by governmental agencies to assume responsibility for providing services necessary to administer justice efficiently. The instant case is a perfect illustration of this phenomenon. In this case as the costs of transporting a number of state prisoners to federal court increased both the Commonwealth and the Marshal's Service became reluctant to provide such service voluntarily.

█ We must be alert to the need to reduce these administrative costs while maintaining the highest standards of fairness and impartiality for all litigants. The courts can reduce the costs of this litigation in a number of ways. For example by carefully screening prisoner civil rights complaints we can eliminate those which are clearly frivolous without requiring the filing of an answer. Requiring an amendment or a more specific statement of the claim may serve to eliminate or narrow issues. The appointment of counsel who volunteer to accept such assignments may aid in clarifying the usual vague and general pro-se pleadings. It may be found that a prisoner's complaint does not raise any issues of fact, and may be susceptible to resolution through motions for summary judgment. Such motions should be encouraged whenever appropriate. There will remain, of course, a number of prisoner civil rights cases that must proceed to trial. In such cases frequently questions will arise regarding the demands of prisoner-plaintiffs to be present to testify at trial and to

summon witnesses in their behalf. A prisoner has a fundamental interest in access to the judicial process. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). However this fundamental interest does not confer on prisoners an absolute right to be present at the trial of civil rights actions. *Moeck v. Zajackowski*, 541 F.2d 177 (7th Cir. 1976); *McKinney v. Boyle*, 447 F.2d 1091 (9th Cir. 1971).[2] Rather, consideration of a prisoner's demand to testify in a civil rights action involves a delicate balancing of the interests of both the prisoner and the state. See, *Jerry v. Francisco*, 632 F.2d 252 (3d Cir. 1980); *Moeck v. Zajackowski*, supra. Frequently a prisoner-plaintiff in a civil rights action may have a very real interest in appearing to testify on his own behalf. In the absence of his testimony, the plaintiff's case may be severely prejudiced. Yet we recognize that the state also has a very important interest in insuring that the confinement of its prisoners continues. Finally, as this dispute demonstrates, the costs for the state of transporting a prisoner to court are significant.

Therefore, in striking this balance the court should consider, not only the interests of the parties, but also the possibility that less burdensome methods exist for obtaining the prisoner's testimony. In some instances the testimony of a prisoner may properly be obtained through depositions. In other cases the court may choose to stay proceedings on a prisoner-plaintiff's claim pending the release of the prisoner from incarceration. See, *Ball v. Woods*, 402 F.Supp. 803 (N.D.Ala.1975). Another option would be for the court to conduct some hearings at the correctional institution itself. In certain cases these procedures could eliminate many of the costs associated with transporting state prisoners to court appearances. However, prisoner civil rights actions serve an important purpose as a vehicle for the vindication of basic human rights. Therefore application of these various alternatives must be done with a sensitivity for the rights of the prisoner-plaintiff. We are confident that these measures can be employed in some cases without any prejudice to the rights of any litigant.

The careful management of prisoner civil rights cases can reduce the problems confronting us in this case. However in some instances, it will still be necessary to transport state prisoners to the federal courthouse in connection with civil rights proceedings. In such instances the question raised by these intervenors regarding allocation of transportation costs remains a very real issue. It is necessary therefore that we address this issue.

■ In this case we believe that this court has the power to order either the Commonwealth or the Marshal Service to bear the entire cost of transporting these prisoners. When the testimony of a prisoner is needed at trial his presence in the courtroom can be compelled through a writ of habeas corpus ad testificandum. The authority of a court to issue such a writ compelling attendance by prisoners at trial was clearly recognized at common law. 3 W. Blackstone Commentaries, 129. In this country the authority of federal courts to use the writ of habeas corpus ad testificandum to compel the presence of state prisoners at trial has long been accepted. See, *Ex Parte Dorr*, 3 How 103, 44 U.S. 103, 105, 11 L.Ed. 514 (1845); *Jerry v. Francisco*, 632 F.2d 252 (3d Cir. 1980). That authority is now expressly granted to federal district courts by statute. 28 U.S.C. § 2241(c)(5).

Because this court has the power to issue a writ of habeas corpus ad testificandum, we believe it also has the power to order the Marshal to execute that writ. By statute the United States Marshal is obliged to "execute all lawful writs, process and orders issued under authority of the United States...". 28 U.S.C. § 569(b). Thus, in this case the United States Marshal would not be free to disregard a writ of habeas corpus directing him to personally obtain

---

**2.** We note, however, that the interest of a prisoner in being present at trial is far more compelling when he is challenging the legality of his arrest or conviction by a habeas corpus proceeding. See, *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1968).

custody of a state prisoner. See e.g. *Ford v. Carballo,* 577 F.2d 404, 407 (7th Cir. 1978), (Marshal may not disregard writ of habeas corpus ad prosequendum issued by district court requiring presentation of state prisoner); see also *Chapman v. Rhodes,* 434 F.Supp. 1007, 1009 (S.D.Ohio 1977), *rev'd on other grounds* —— U.S. ——, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), (in state prisoner civil rights action cost of executing writ of habeas corpus ad testificandum charged to the United States Marshal Service).

Similarly we feel that this court could order the Commonwealth to deliver state prisoners directly to the federal courthouse. A writ of habeas corpus ad testificandum is typically directed to the custodian of the prisoner, demanding that he present the prisoner to court. See, *Beard v. Mitchell,* 604 F.2d 485, 504 (7th Cir. 1980), ("the writ [of habeas corpus ad testificandum] is ordinarily issued to prison wardens to secure the presence at trial of individuals held in government custody.") In this case the custodians of these prisoners are state officials. Therefore a writ could properly be addressed to these state officers ordering them to present the prisoners before us.

Moreover under the All Writs Act, 28 U.S.C. § 1651(a) this court has the authority to issue any writ necessary or appropriate in aid of its jurisdiction. We believe that this Act also gives the district court authority to issue writs of habeas corpus ad testificandum to state officers. In this case we are dealing with allegations by state prisoners that their federally guaranteed civil rights have been violated. Obviously a writ ordering the custodian of these prisoners to present them in federal court for the purpose of taking their testimony would be in aid of our jurisdiction. Therefore it would clearly be within this court's power to issue such a writ. See *Ford v. Carballo, supra.*

██ In sum we believe that this court possesses broad discretion in deciding whether to issue a writ of habeas corpus ad testificandum. In our view this discretion extends to allocating responsibility for the costs associated with executing such a writ.

We will therefore exercise this discretion to achieve a result which we believe to be fair and equitable to all the parties in this case. In this regard we find the approach adopted by the United States Court of Appeals for the Fifth Circuit in *Ballard v. Spradley,* 557 F.2d 476 (5th Cir. 1977) most appropriate.

*Ballard* is, on its facts, indistinguishable from the case before us. In *Ballard,* the plaintiffs, eight state prisoners, brought an action under 42 U.S.C. § 1983 against certain state prison officials. In the course of this lawsuit a dispute arose between the state and the Marshal Service regarding the transportation of these prisoners to court appearances.

To resolve this dispute the district court issued writs of habeas corpus ad testificandum to both the state and the Marshal. These writs required the state to transport the prisoners to the county jail nearest the federal courthouse. The Marshals then were required to transport the prisoners from the jail to the courthouse; keep them in custody at the courthouse; and return them to the county jail at the end of their court appearances.

The Marshal Service appealed this decision to the United States Court of Appeals arguing: (1) that the interests of the state so outweighed those of the federal government that the state should bear sole responsibility for the transportation of these prisoners; and (2) that the Marshal Service did not have sufficient funds to provide this transportation service. The Court of Appeals rejected both of these arguments and affirmed the decision of the district court.

In this case the Marshal Service relies on the same arguments that it presented in *Ballard.* On the basis of the rationale advanced in that case, however, we reject both of these arguments.

Turning first to the interests analysis presented by the Marshal Service, we recognize that the state has a significant interest in the outcome of this case. However, the state is not the only party with an interest in this matter. The prisoner-plaintiffs in this action have invoked the protection of

federal constitutional guarantees. Moreover they have turned to a federal court to seek redress for these alleged violations of federal rights. This, in our view, creates a sufficient federal interest to justify ordering the Marshal to accept some responsibility for the transportation of these prisoners. *Ballard v. Spradley, supra.*

Nor do we accept the argument that the Marshal Service has no authority to expend funds for transporting state prisoners in connection with civil rights cases. Quite the contrary we feel that there is both statutory and regulatory authority for this type of expenditure by the Marshal Service. 28 U.S.C. §§ 567, 571; 28 C.F.R. §§ 0.11(b), 0.138(a), 0.142 (1980); *Ballard v. Spradley, supra.*

In fact we feel that the Marshal Service's argument on this issue entirely misses the point. The statutory duty of the Marshal is to assist the federal courts in conducting civil and criminal litigation. In fulfilling this purpose the Marshal may be called upon to perform many duties including: serving writs, attending sessions of court, and guarding prisoners. 28 U.S.C. § 569. All of the expenses associated with these duties are properly costs of the administration of justice and as such are borne by the United States. *United States ex rel Griffin v. McMann,* 310 F.Supp. 72, 74 (E.D.N.Y. 1970).

In addition the Marshal's argument that it cannot afford to transport state prisoners ignores a very important point. In this case we are dealing with indigent state prisoners. Therefore once it is determined that the presence of these prisoners is needed for trial the cost of transportation must be borne either by the state or federal governments. Because both the state and federal governments are involved, it is ultimately the taxpayer who must bear these expenses. Accordingly, "since the interest of the people lies in the enforcement of constitutional rights, the sovereignty which bears the burden of costs is of little import." *United States ex rel Griffin v. McMann, supra,* at 75.

■ Therefore in this case we will order the Commonwealth of Pennsylvania to transport these prisoners at its own expense, to the county jail nearest the federal courthouse. The United States Marshal will then be responsible for transporting the prisoners to and from the jail for court appearances. The Marshal will also be responsible for maintaining custody of these prisoners while they are in the United States Courthouse.

In our view this result is appropriate not only because it is consistent with the prior practice of this court, but also because it equitably distributes the costs associated with the transportation of these prisoners.[3]

An appropriate order will issue.

### ORDER

AND NOW, this 3rd day of February 1982, in accordance with the accompanying Opinion, IT IS ORDERED that all writs of habeas corpus ad testificandum issued to compel the presence of plaintiffs or witnesses for plaintiffs in all civil rights actions brought by prisoners in state custody proceeding in forma pauperis shall be deemed to be complied with when the Commonwealth, at its own expense, transports the prisoners to the state custodial institution nearest the United States Courthouse. The Commonwealth shall then inform the United States Marshals Service that the prisoners are available for court appearances. It will be the responsibility of the Marshals Service to transport these prisoners to the United States Courthouse; maintain custody over them at the United States Courthouse; and return them to the state author-

---

**3.** We wish to note that the result we reached today is limited only to instances in which a state prisoner is being transported to testify in a civil rights action. We specifically do not include in our holding state prisoner habeas corpus petitions challenging the constitutionality of the prisoner's arrest or conviction. In these cases we feel that the balance of interests is much different. The state obviously has a much more compelling interest in upholding the legality of its criminal convictions. Therefore, this greater interest may impose greater responsibilities on the state for transporting prisoners to court appearances.

ities when their presence is no longer required at the United States Courthouse.