93 F.3d 205
 Dale J. LATIOLAIS; Vincent A. Simmons, Plaintiffs-Appellants,
v.
John P. WHITLEY, Warden; Leslie Dupont, Major; Johnny
Butler, Captain; A. Menzina, Captain; Unknown
Rachel, Supervisor; Eddie Veala, EMT;
Douglas Durett, Defendants-Appellees,
D. Norman, Dietitian; Unknown Durett, Class Officer;
Unknown Bernard, D.B. Member, Defendants.
 No. 95-30639.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 3, 1996.
 
 Dale J. Latiolais, Angola, LA, Pro Se.
 Vincent A. Simmons, Angola, LA, Pro Se.
 Rose Polito Wooden, Assistant Attorney General, Louisiana Department of Justice, Division of Risk Litigation, Baton Rouge, LA, for John P. Whitley, Leslie Dupont, Johnny Butler, A. Menzina, Unknown Rachel, D. Norman, Unknown Durrett, Eddie Veala.
 Appeal from the United States District Court For the Middle District of Louisiana.
 Before WISDOM, EMILIO M. GARZA, and PARKER, Circuit Judges.
 EMILIO M. GARZA, Circuit Judge:
 
 
 1
 Plaintiffs Dale J. Latiolais and Vincent A. Simmons appeal from a jury verdict rejecting their claims for damages under 42 U.S.C. § 1983. We reverse and remand for a new trial.
 
 
 2
 * Latiolais and Simmons were inmates at the Louisiana State Penitentiary at Angola. About half the inmates at the penitentiary, including Latiolais and Simmons, became sick due to an incident of food poisoning. The day of the incident, the inmates were treated by an Emergency Medical Technician ("EMT"), and excused from work. The next morning, Latiolais, Simmons, and several other prisoners continued to suffer symptoms from the food poisoning. Latiolais and Simmons informed prison officials of their condition, and asked to be declared "medical emergencies." Prison officials told Latiolais and Simmons that they would be locked up if they did not return to work, but called an EMT to examine them. The EMT asked Latiolais and Simmons questions about their symptoms, and, according to the defendants' testimony, indicated that the inmates were healthy enough to work. When Latiolais and Simmons persisted in their claims of illness, they were placed in administrative segregation. Latiolais and Simmons contend that once in administrative segregation, they were examined again and found to be suffering residual effects from the food poisoning.
 
 
 3
 According to Latiolais and Simmons, Corrections Officer Leslie Dupont then filed a fabricated disciplinary charge against them for attempting to incite a work stoppage and creating a security risk among the inmates. Latiolais and Simmons allege that this charge was falsified and filed in retaliation for grievances and lawsuits the two inmates had filed against prison officials. A hearing was held before a disciplinary board, and Latiolais and Simmons were sentenced to eight days of extra duty. After further investigation, the disciplinary board summoned Latiolais and Simmons to testify before the board. The disciplinary board then sentenced Latiolais and Simmons to punitive lockdown. At no time were Latiolais and Simmons allowed to present evidence that the original charge of inciting a work stoppage and creating a security risk had been fabricated.
 
 
 4
 Latiolais and Simmons then filed this 42 U.S.C. § 1983 suit alleging that prison officials fabricated a disciplinary charge against them and subjected them to punitive measures in retaliation for filing other actions against prison officials. Latiolais and Simmons also claimed that prison officials denied them their right to call witnesses and present documentary evidence in their defense at their disciplinary hearing. The district court tried the case before a jury, entirely on deposition testimony. Latiolais and Simmons were not allowed to attend the proceeding, and the district court did not appoint an attorney to represent them at the trial. The jury found for the defendants on all claims. Latiolais and Simmons appeal, alleging multiple errors at trial.
 
 II
 
 5
 Latiolais and Simmons argue that errors committed during the trial of their § 1983 claims violated the requirements of fundamental fairness. Specifically, Latiolais and Simmons argue (1) that their presence at trial was essential to the fairness of the proceedings, (2) that the district court erred in allowing the defendants to rest their case prior to introducing deposition testimony that was necessary to the plaintiffs' case, (3) that the district court erred in allowing defendant Leslie Dupont to read his deposition to the jury in person, and (4) that the district court erred in not allowing taped recordings of disciplinary hearings to be admitted into evidence.
 
 
 6
 There is scant case law on the subject of fundamental fairness in prisoner civil suits. It is well established, however, that "There is a constitutional right to a fair trial in a civil case." Lemons v. Skidmore, 985 F.2d 354, 357 (7th Cir.1993); see also Bailey v. Systems Innovation, Inc., 852 F.2d 93, 98 (3d Cir.1988) (holding that "fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right"). As one court has noted, "It is difficult, but essential to maintain this right for prisoner-plaintiffs." Lemons, 985 F.2d at 357.[1] At a minimum, fundamental fairness requires that plaintiffs have the opportunity to present their cases so that the trier of fact can make a meaningful search for the truth. See Sims v. ANR Freight System, Inc., 77 F.3d 846, 849 (5th Cir.1996) ("A trial is a proceeding designed to be a search for the truth."). In determining whether the trier of fact was afforded the opportunity to make such a meaningful search for the truth, we must examine all of the circumstances surrounding the trial. A trial was not fundamentally fair if a party's cause was substantially prejudiced by errors at trial.[2]A
 
 
 7
 Latiolais and Simmons contend that the district court erred in denying their request to be present at the trial of their § 1983 claims. They argue that their presence at trial was essential in order for the jury to properly decide their case. A district court has the power to procure a prisoner's presence and testimony through issuance of the writ of habeas corpus ad testificandum. Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir.1977) (citing 28 U.S.C. § 2241(c)(5)). Whether to issue the writ rests within the sound discretion of the district court. Id. Although a prisoner has no constitutional right to be present, or to testify, at his own civil trial, the district court may not summarily exclude a prisoner-plaintiff from the trial of his civil rights suit. Ballard, 557 F.2d at 480; Stone v. Morris, 546 F.2d 730, 735 (7th Cir.1976). In order to determine whether the prisoner should appear at trial, the district court must consider factors such as "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." Ballard, 557 F.2d at 480. Consideration of these factors is meant to ensure that the district court properly weighs the interest of the inmate in presenting his case in person, versus the interest of the state in maintaining the inmate's incarceration. Stone, 546 F.2d at 735 (citing Price v. Johnston, 334 U.S. 266, 284-85, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1948)).
 
 
 8
 In its order denying the prisoners' request for writs of habeas corpus ad testificandum, the district court considered the possibility of staying the matter until the prisoners were released, and the expense and security risks involved in bringing the prisoners to court. After considering these factors, the district court concluded that the plaintiffs need not be present at trial, and denied plaintiffs' motions for writs of habeas corpus ad testificandum. Instead, the district court ordered the trial to be conducted entirely on deposition testimony. It is unclear from the record whether the district court considered the extent to which plaintiffs' presence at trial would aid in the resolution of their case. Plaintiffs' case turned largely on judging the credibility of the prisoners versus the prison officials. While the need to make credibility assessments "does not mean, of course, that the petitioner's presence will be required," it is an important consideration to be carefully weighed against the expense and safety concerns articulated above. Ballard, 557 F.2d at 480.[3] The district court's failure to weigh this consideration against the practical concerns of safety and expense was error. However, the mere exclusion of Latiolais and Simmons may not have been prejudicial.[4] Accordingly, we must examine the other alleged errors at trial in order to determine if the exclusion of the plaintiffs from trial prejudiced their substantial rights.
 
 B
 
 9
 Latiolais and Simmons argue that the district court erred in allowing the defendants to rest their case prior to offering into evidence the deposition testimony of Dr. Robert J. Barnes, M.D. According to Latiolais and Simmons, Dr. Barnes would have confirmed that they were actually ill on the morning after the food poisoning incident. Further, Latiolais and Simmons point out that they had stipulated prior to trial that Dr. Barnes would testify and would introduce the plaintiffs' medical records.[5]
 
 
 10
 In the ordinary case, it is up to the defendants and their counsel, subject to the rules of evidence, to determine what evidence to present and when to rest their case. In this case, however, where neither the plaintiffs nor a representative were present at trial, the district court's decision to allow the defendants to rest their case prior to introducing Dr. Barnes's testimony was error. This trial was to be conducted solely on the basis of deposition testimony, and neither the plaintiffs nor a representative were to be present. Accordingly, the plaintiffs and defendants had agreed prior to trial what evidence each side would present. Indeed, defendants' counsel stated in the opening of Dr. Barnes's deposition that,
 
 
 11
 I want the record to reflect that we have stipulated, the plaintiffs and myself, that Dr. Barnes is going to introduce the medical records in connection with this incident, and his testimony is going to cover the reports that were made by the [EMTs] and, therefore, we will not need the [EMTs'] testimony because Dr. Barnes is going to go ahead and introduce all the medical records that are relevant.
 
 
 12
 The plaintiffs and defendants had agreed that Dr. Barnes's testimony would be admitted, along with the plaintiffs' medical records. This evidence was important to the plaintiffs' claims: Dr. Barnes's deposition contains evidence that Latiolais and Simmons did suffer lingering effects from the food poisoning. Thus, the evidence tended to support the defendants' claim that they remained sick on the morning following the food poisoning incident, and called into question the defendants' credibility on that issue. Because the plaintiffs were neither represented nor present at trial, however, they could not object to the defendants' decision to rest prior to introducing Dr. Barnes's testimony and their medical records. Here, because the trial was to be conducted solely on the basis of agreed upon deposition testimony, and neither the plaintiffs nor their representative were present, the district court erred by allowing the defendants to rest without presenting Dr. Barnes's deposition and putting plaintiffs' medical records into evidence.[6]
 
 C
 
 13
 Plaintiffs also argue that the district court erred in allowing defendant Leslie Dupont to read his deposition to the jury, while all the other depositions were presented to the jury by a "reader" or court reporter. We agree. Credibility determinations are sensitive matters. See Taylor v. Gibson, 529 F.2d 709, 716 (5th Cir.1976) (noting the importance of credibility determinations and the care that courts should exercise in making them). Here the entire case depended on assessing the credibility of the prisoners and their witnesses versus the credibility of prison officials. To allow Dupont to read his deposition live to the jury may have given Dupont an unfair advantage over the plaintiffs in this case. The jury was only allowed to judge the plaintiffs' credibility on the content of their depositions. The jury, however, had the additional benefit of Dupont's inflection and tone in judging his deposition testimony. In addition, the plaintiffs were not present to object and thus the district court was never asked to consider the propriety of allowing Dupont to read his own deposition. We hold that, under the facts of this case, allowing Dupont to read his deposition to the jury was error.
 
 D
 
 14
 Based on a review of all the circumstances surrounding the trial in this case, we conclude that the accumulation of errors committed in the trial of Latiolais's and Simmons's civil rights claims violated notions of fundamental fairness,[7] necessitating a new trial.[8] Having so held, we also determine that excluding Latiolais and Simmons from the proceedings, without considering the need for them to be present, prejudiced the substantial rights of the plaintiffs. This is so because Latiolais and Simmons did not have the opportunity to object to the errors which rendered the trial of their claims fundamentally unfair.[9] On remand, the district court should reconsider whether Latiolais and Simmons should be allowed to attend the trial of their claims.[10] We do not, however, express any opinion as to whether Latiolais and Simmons must be present at the retrial of their claims. We only hold that under the particular facts of this case, substantial justice requires a new trial.
 
 III
 
 15
 For the foregoing reasons, we VACATE the jury's verdict, and REMAND for a new trial.
 
 ROBERT M. PARKER, Circuit Judge, concurring:
 
 16
 I concur in the good opinion of Judge Emilio M. Garza writing for the panel. He has maintained fidelity to one of our guiding principals, that is to write narrowly where possible. It was possible in this case and he did.
 
 
 17
 I also commend Judge Morey L. Sear for his continuing effort to find innovative ways to address the flood of prisoner civil rights lawsuits that will efficiently dispose of these cases in a manner that is fair to both sides. See Taylor v. Gibson, 529 F.2d 709, 717 (5th Cir.1976) (urging district courts to develop imaginative and innovative methods of dealing with the flood of prisoner complaints).
 
 
 18
 I write separately to address the potential problem area of jury selection in these trials where one or both parties are not present. As Judge Garza points out, we have held that a prisoner does not have a constitutional right to be present at the trial of every 42 U.S.C. § 1983 suit filed. Ballard v. Spradley, 557 F.2d 476 (5th Cir.1977). However, Ballard concerned the rights of prisoners to be present at a non-jury trial. Id. at 478. Neither this Circuit nor the Supreme Court has addressed the rights of litigants under the Seventh Amendment to be present during the trial of jury cases. When and if this case is re-tried, I invite the district court to give serious consideration to whether fundamental fairness can be served in a process that deprives a party of an opportunity to exercise the subjective decisions that have historically been part and parcel of jury selection. In the absence of some agreement, such as the parties waiving preemptory challenges or the absent party agreeing to a procedure whereby an attorney or other surrogate exercises the decisions relative to jury selection, a serious argument can be made that fundamental fairness may be lacking. I also recognize that an experienced lawyer may well be able to do a better job of selecting a jury for a prisoner litigant than the litigant himself, and if the trial judge so finds then one may be hard pressed to argue that a procedure that results in a "better" jury for a prisoner could not then be fundamentally unfair. In the event that jury selection procedures similar to those utilized here are again employed by the district court upon re-trial, I invite the district judge to make findings that may assist us in our substantive due process and Seventh Amendment considerations.
 
 
 19
 It is probable that the explosion of technological advancement will be determinative of many of the vexing potential problems raised by the district courts' search in this troubling area of litigation. Courts are no longer restricted to a choice between live testimony and a transcription of a deposition read to the jury by attorneys. Tools now available, such as video depositions and video teleconferencing, may greatly impact on the fundamental fairness of trials for an absent litigant.
 
 
 20
 I therefore concur that justice requires a new trial in this case, but emphasize that we leave to the district court the task of fashioning an effective remedy for the errors identified in the first trial.
 
 
 
 [1]
 This is particularly true because, as the Supreme Court has noted, "habeas corpus and civil rights actions are of 'fundamental importance ... in our constitutional scheme' because they directly protect our most valued rights." Bounds v. Smith, 430 U.S. 817, 827, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (quoting Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969))
 
 
 [2]
 Our analysis in this case is informed by FED.R.CIV.P. 61 which states that:
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
 FED.R.CIV.P. 61 (1996).
 
 
 [3]
 As the Fourth Circuit noted in a similar case,
 Plaintiff's claim hinges on a factual conflict, i.e., whether the alleged search in fact occurred, the resolution of which in turn depends on the relative credibility of inmates Jones and Freeman on the one hand and the prison officials on the other. Where the record requires the trier of fact to make credibility choices, the need to observe the principal witnesses requires no elaboration.
 Carter v. Hutto, 781 F.2d 1028, 1032 (4th Cir.1986) (citing Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir.1977)).
 
 
 [4]
 Because prisoner-plaintiffs have no constitutional right to be present at their civil trial, it follows that unless the trial was fundamentally unfair, the plaintiffs have no right to a new trial premised solely on their exclusion
 
 
 [5]
 During the presentation of the defense at trial, the district court noted that there were two more depositions left to be read, and asked the defendants' counsel how much of these she planned to present. After a short recess, defense counsel responded that "the defense rests, and we have no more witnesses."
 
 
 [6]
 We note that after the defense had rested, the district court informed the jury that the charge would be ready in a few minutes. At that point, the following illuminating exchange took place between the court and a juror:
 Court: I just wanted you to know that early on so that you would know that there is light at the end of the tunnel.
 Juror: Then that's the end of it?
 Court: Well, no, then you begin your deliberation.
 Juror: Was there an EMT report filled out on these gentlemen?
 Court: Well, you can only consider that which is in evidence. You cannot consider that which is not.
 It is clear that at least one juror was interested in the medical evidence that the defendants were allowed to omit.
 
 
 [7]
 We note that in the context of a criminal trial, an accumulation of errors can likewise be grounds for a new trial. See Derden v. McNeel, 978 F.2d 1453, 1461 (5th Cir.1992) (en banc ) (holding that an accumulation of errors can necessitate a new trial, where errors "so infected the trial with unfairness as to render [a defendant's] conviction a denial of due process")
 
 
 [8]
 We emphasize that it is not error per se to conduct a trial of a prisoner-plaintiff's civil rights suit entirely on deposition testimony. Our decision today only holds that, on the facts of this case, the presentation of the deposition testimony did not comport with notions of fundamental fairness
 
 
 [9]
 Further evidence of the prejudice caused by the absence of Latiolais and Simmons from trial involved the district court's decision to deny admission of taped recordings of their disciplinary hearings. The district court denied admission on the grounds that the tapes were "just not relevant to the two claims still open." However, Latiolais and Simmons maintain that because witnesses at trial could not remember important aspects of the disciplinary hearings, the tapes were crucial to show that Latiolais and Simmons were denied due process. Because Latiolais and Simmons were not present at trial to make an offer of proof, we have no way of determining if the tapes were relevant or not
 
 
 [10]
 As an alternative, the district court should also consider whether this case involves "exceptional circumstances" such that justice requires the appointment of counsel for the retrial of Latiolais's and Simmons's civil rights claims. See Robbins v. Maggio, 750 F.2d 405, 412 (5th Cir.1985) (holding that appointment of counsel under 28 U.S.C. § 1915(d) may be necessary where the case involves "exceptional circumstances" which is determined by "the type and complexity of the case, and the abilities of the individual bringing it") (internal quotation marks omitted)