19-280-pr
*Davidson v. Desai, et al.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———

AUGUST TERM 2019
No. 19-280-pr

**RONALD DAVIDSON,**
*Plaintiff-Appellant,*

v.

**UDAY K. DESAI, M.D., CHENG YIN, M.D., HEMAN K. FOWLER, N.P.,
FLOYD BENNETT, CALVIN WEST, DANA M. SMITH, WESLEY
CANFIELD, M.D.,**
*Defendants-Appellees.*[1]

———

On Appeal from the United States District Court
for the Western District of New York

———

ARGUED: MAY 22, 2020
DECIDED: JULY 7, 2020

———

Before:     WESLEY, LIVINGSTON, and MENASHI, *Circuit Judges.*

Ronald Davidson appeals from a judgment entered by the
United States District Court for the Western District of New York

———

[1] The Clerk of Court is directed to amend the caption as above.

(Skretny, *J.*), on January 9, 2019. After a five-day bench trial, the court rejected Davidson's claims of deliberate indifference by prison officials to his medical conditions while he was incarcerated in a New York state prison. At the time of trial, Davidson was on parole in New York City and asked the district court to order the New York Board of Parole to allow Davidson to attend his trial in Buffalo and for the district court to pay for his travel. He appeals solely on the basis that the district court erred by not issuing a writ of habeas corpus ad testificandum to compel his attendance.

We conclude that although a parolee has no constitutional right to attend his own civil trial, a district court does have the authority to compel a parolee's attendance by issuing a writ of habeas corpus ad testificandum pursuant to 28 U.S.C. § 2241(c)(5). But because Davidson did not seek such a writ from the district court and because the relief he did request differed significantly from that provided by the writ, our review is only for plain error, which is not shown here.

Even if Davidson's request at the district court were construed as a petition for the writ, we would still affirm because Davidson did not demonstrate that issuing the writ would be "necessary" as required by § 2241(c)(5). Moreover, even if the district court should have issued the writ, we conclude that the failure to do so was harmless because Davidson has not demonstrated that the outcome of the trial would have been different if he had been physically present.

Accordingly, we **AFFIRM**.

2

KEVIN P. MULRY, Farrell Fritz, P.C., Uniondale, New York, *for Plaintiff-Appellant*.

FRANK BRADY, Assistant Solicitor General (Victor Paladino, Senior Assistant Solicitor General, Barbara D. Underwood, Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, New York.

MENASHI, *Circuit Judge*:

In this appeal, we decide whether a district court can compel state officials to bring a parolee to his own civil trial and, if so, what showing is required to do so. We conclude that although a parolee has no constitutional right to attend his own civil trial, a district court has discretion to issue a writ of habeas corpus ad testificandum to compel a parolee's attendance when "necessary to bring him into court to testify or for trial." 28 U.S.C. § 2241(c)(5).

Plaintiff Ronald Davidson was on state parole in New York City when his civil trial—alleging deliberate indifference by state prison officials—began in Buffalo. Davidson, represented by counsel throughout the trial, claimed his terms of parole forbade him from leaving New York City, so he asked the district court to order the New York Board of Parole to allow him to attend his trial and for the district court to pay his travel expenses to Buffalo. The district court rejected those requests because it believed it lacked authority to order the Board of Parole to let Davidson travel to Buffalo.

We conclude that the district court had authority to issue a writ of habeas corpus ad testificandum compelling Davidson's state custodian to bring him to the trial in Buffalo. But Davidson did not seek such a writ at the district court, and the relief he requested was far different than what the writ would provide. A writ of habeas corpus would not merely "allow[]" him to leave New York City—it would *mandate* his attendance in Buffalo; and the costs of bringing him to Buffalo would be borne by his state custodian, not the district court. Because Davidson did not ask the district court for the writ in name or in substance, our review is only for plain error, which Davidson cannot demonstrate.

Even if we were to construe Davidson's requests at the district court as a petition for a writ of habeas corpus ad testificandum, he still would not be entitled to relief because he failed to demonstrate that his physical presence was "necessary," as required by 28 U.S.C. § 2241(c)(5). The court had already authorized Davidson to testify remotely by video and then use a phone to listen to other witnesses and to consult with his counsel during breaks. Given these accommodations, Davidson's physical presence was not necessary. Davidson also failed to develop the record to show that he had fully pursued state remedies that could provide him with relief without the need to issue the writ. He claimed to have asked parole officials for permission to leave New York City, but the record was unclear about whether he or his counsel had made a proper request and, if so, whether that request had been ignored or denied.

Finally, even if the district court should have issued a writ of habeas corpus ad testificandum, we conclude that the failure to do so was harmless. Davidson testified remotely by video, listened by phone to the remaining witnesses, and consulted frequently with his

4

counsel during breaks. Although technical issues prevented Davidson from hearing portions of two witnesses' testimony, Davidson was still able to consult with his counsel before those witnesses were excused, and the district court allowed Davidson's attorney a wider scope on recross-examination. Even now, despite having the full transcripts, Davidson has not identified any line of questioning he was unable to pursue because he was not physically present. Without evidence that the outcome of the case was affected, any error was harmless.

We affirm the district court's judgment.

**BACKGROUND**

**I**

From 1976 to 2016, Plaintiff Ronald Davidson was incarcerated in a New York state prison. In 2003, he filed this lawsuit in the Western District of New York, alleging that prison officials retaliated against him for filing grievances and were deliberately indifferent to several medical conditions. He was paroled in April 2016 and moved to New York City.

The district court granted summary judgment to the defendants on all of Davidson's claims except for three counts of deliberate indifference to medical conditions, which the court set for a bench trial beginning June 19, 2017. At a hearing on May 3, 2017, Davidson's pro bono attorneys raised the issue of how Davidson—still on parole in New York City—would get to his trial in Buffalo: "We have asked Mr. Davidson to take the steps necessary with his parole officer to have permission to come up here for the trial, and that has yet to happen. We have written the parole officer. I haven't

had any response. But I'm—we've encouraged Mr. Davidson over and over again to get that permission." App'x 46-47.

On May 23, 2017, Davidson's counsel filed a motion stating: "I have been trying for over six months to have my client obtain permission from New York State Parole to attend the trial in person and also to obtain housing at a State Parole Halfway House locally during the trial. I have had no success to date. My client has not obtained permission to attend the trial from New York State Parole." App'x 73 (paragraph numbers omitted). "As a result, on April 20, 2017, I sent his Parole Officer a letter requesting her assistance in obtaining permission for Mr. Davidson to attend the trial. I forwarded to her a copy of the Court's Scheduling Order identifying the trial date. I received no response." *Id.*

The motion then stated: "On May 15, 2017, I contacted my client's supervisory Parole Officer by email to request his assistance. I have had no response from him either. The only response I have had regarding the email to the Supervisor is from my client who wrote a letter to his supervisory Parole Officer telling him to ignore my email and claiming that I had made false statements to the Parole Officer." App'x 74 (paragraph number omitted).

In the same motion, Davidson's counsel asked the court to pay for Davidson's transportation to Buffalo, his lodging at a hotel, and his meals. App'x 75. There was only one request regarding attendance: "In light of the lack of response from the New York State Parole Officer, I also ask the Court for an Order directing that my client be allowed to attend the trial." *Id.* The motion then noted: "My client has also indicated a willingness to attend the trial by video from

the Southern District Courthouse, but I have no knowledge as to whether that is a feasible alternative." *Id.*

The district court heard this motion on May 25, 2017, and stated: "I'm not going to direct the New York State Board of Parole to make a determination or to permit Mr. Davidson to travel. I don't have the jurisdiction in my view." App'x 80. The court also stated that it lacked information about the terms of parole: "I don't have full information on what the parole conditions are. You know, I don't have what the protocol is with respect to an individual seeking permission to travel. You know, that travel request might be something that's beyond the restrictions purview of the conditions of parole." App'x 83-84.

After the court had rejected his requests, Davidson (appearing via phone) returned to the topic and contended that he "shouldn't have to seek permission" to come to Buffalo and that when he was previously in prison, "every time I had a trial a writ of habeas corpus ad testificandum was issued and the authorities got me there. So you're telling me on the outside I should have more problems getting to a trial?" App'x 89. The court stated, "All right. You've made your record. I will note that for the record." *Id.*

At the same hearing, Davidson also repeatedly made clear that he was "willing to appear live—by live video from the Southern District of New York if you can arrange it. I can't arrange it on my own. I'm willing to appear live by video. That's definitely what I'm willing to do." App'x 97; *see also* App'x 91.

The minute entry for this hearing stated: "Plaintiff still needs to secure permission to travel from NYS Parole. Court will not direct same." App'x 37. The district court later granted approval for

7

Davidson to testify on the first day of trial by live video from the Southern District of New York with one of his attorneys by his side, but the facility and his attorney were not available for the entire trial, so the court granted approval for Davidson to listen to the other witnesses by phone and to consult with his attorneys during breaks. *Id.*

## II

The trial began on June 19, 2017, and before opening statements, Davidson's attorney asked for a "hearing [on] the failure of the parole officials in New York to issue him a pass," App'x 121, but the district court rejected the request, saying no hearing was necessary and that it had "made [its] ruling and that will stand," App'x 122. The first witness was Davidson, who testified by live video from the Southern District of New York for the entire day with one of his attorneys by his side. There were no technical issues, and the district court allowed Davidson to speak privately with his attorney before concluding his direct examination and again before redirect.

On the second day of trial, June 20, 2017, Davidson was authorized to call in and listen to the defendants' witnesses, starting at 9:00 a.m. with Floyd Bennett (a former prison superintendent). But Davidson failed to call in on time. His attorney informed the court that Davidson was aware of his ability to call in but "I just don't know whether he's going to take advantage of that or not." App'x 350. His attorney did not object to proceeding with Bennett's testimony. Davidson missed about 20 pages of testimony before his attorney noted that Davidson was on the line and ready to listen, but he was cut off again. Davidson missed the next 18 pages of Bennett's testimony before calling back in. Before Bennett's cross-examination,

8

Davidson was able to speak privately with his counsel, although Davidson was not connected for the last few pages of the cross-examination itself. In total, Bennett testified for about 61 pages of transcript, and it appears Davidson was on the line for about 18 of those pages.

The next witness was Calvin West (a subsequent prison superintendent). His direct examination was about 13 pages long, which Davidson missed entirely. At that point the court tried to connect Davidson, but the call went to voicemail. Davidson missed West's cross-examination, which was about 17 pages, as well as his redirect of 3 pages, but Davidson was reconnected before West's 7-page recross-examination.

Just before Davidson was reconnected, his attorney stated: "[Davidson] indicated that there was some problem at his end with the phone, which he believes is corrected. So, he asked if we could try again at [a specified] number." App'x 360.

Davidson's attorney stated that he had been unable to discuss West's testimony with Davidson before moving to cross-examination, prompting the district court to offer a wider scope of questioning on recross-examination than would normally be permissible: "I'm going [to] make an accommodation in that regard, because the logistics are somewhat difficult, but I think this procedure works and I think it's effective and efficient." Dist. Ct. ECF No. 297 at 108. In total, West testified for about 40 pages, and it appears Davidson was on the line for about 6 of those pages.

The next witness was Dana Smith (a deputy prison superintendent), and it appears Davidson was able to hear all of Smith's testimony and was given a chance to discuss strategy

privately with his counsel. The next witness was a pre-recorded deposition of Cheng Yin (a prison doctor), about which Davidson had already discussed strategy with his counsel.

The third day of trial was June 21, 2017. There was a very brief period during which Davidson was not on the line, but it appears he heard all of the testimony of Uday Desai (a prison doctor) and had a chance to speak privately with his counsel about strategy.

The fourth day of trial was June 22, 2017. Davidson again was on the phone and apparently heard witnesses Heman Fowler (a prison nurse) and Wesley Canfield (a prison doctor) without issues and had a chance to speak privately with his counsel about strategy for both witnesses. The final witness of the trial was Plaintiff's expert Mary Reid (a professor of oncology), and Davidson apparently heard the entire testimony.

The fifth and final day of trial was June 23, 2017, which featured no witnesses, but Davidson did have a chance to discuss strategy privately with his counsel.

For the entire trial, witness testimony comprised about 613 pages of transcript, of which Davidson was apparently on the line for about 536 pages. This total does not include the additional testimony of Dr. Yin, which was presented by pre-recorded video but not included in the original transcript. Yin's testimony was later transcribed on 120 additional pages.

On January 8, 2019, the district court issued a lengthy decision ruling against Davidson on all claims. In a footnote, the court addressed the issue of Davidson's request for a hearing and reiterated its prior position that "the question of whether Davidson should be

permitted to travel was not reserved to this Court, but rather, was exclusively reserved to state parole officials." App'x 417 n.6.

Davidson timely appealed to this court.

## DISCUSSION

### I

Davidson contends that the district court had the authority to issue a writ of habeas corpus ad testificandum compelling his physical attendance at his own civil trial. We agree, but we nonetheless affirm because Davidson did not seek that form of relief below, and he cannot demonstrate plain error.

A litigant has "no constitutional right to be present, or to testify, at his own civil trial." *Latiolais v. Whitley*, 93 F.3d 205, 208 (5th Cir. 1996). Although there is a constitutional right of "access to the courts," that right is satisfied by an "opportunity to consult with counsel and to present his case to the court," which typically can be accomplished even when the litigant is not physically present at the courthouse. *Perotti v. Quinones*, 790 F.3d 712, 721 (7th Cir. 2015). Accordingly, the "right to access does not necessarily mean the right to be physically present at the trial of a civil suit." *Pollard v. White*, 738 F.2d 1124, 1125 (11th Cir. 1984).

A district court does, however, have the discretion to compel the physical presence of any "prisoner" at his own civil trial by issuing a writ of habeas corpus ad testificandum pursuant to 28 U.S.C. § 2241(c)(5), which states: "The writ of habeas corpus shall not extend to a prisoner unless … [i]t is necessary to bring him into court to testify or for trial." The decision whether to issue a writ of habeas corpus ad testificandum rests in the district court's discretion, *Perotti*,

11

790 F.3d at 721, although a request for the writ may not be "arbitrarily denied," *Muhammad v. Warden, Balt. City Jail*, 849 F.2d 107, 112 (4th Cir. 1988).

To be sure, § 2241(c) refers to "a prisoner" rather than a parolee. However, the Supreme Court has recognized that, at least in some circumstances, a parolee qualifies as a prisoner under the statute. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the [state] Parole Board within the meaning of the habeas corpus statute.").

The parties in this case agree that Davidson's parole conditions were sufficiently severe that he was a "prisoner" for purposes of § 2241(c)(5). We therefore have no doubt that a writ of habeas corpus ad testificandum could issue here upon a proper showing. [2] Accordingly, although Davidson had no right to attend his civil trial, the "district court ha[d] the power to procure [Davidson's] presence and testimony [at his own civil trial] through issuance of the writ of habeas corpus ad testificandum" pursuant to § 2241(c)(5). *Latiolais*, 93 F.3d at 208 (italics omitted).[3]

---

[2] Such a showing, as discussed below, would include a demonstration that Davidson was subject to conditions of parole that limited his travel and prevented him from attending his own civil trial, that he could not obtain relief from parole authorities, and that his physical attendance was necessary to secure his right of access to the court. *See* Part II, *infra*.

[3] Nearly every circuit has held that a district court may issue a writ of habeas corpus ad testificandum to compel the attendance of an inmate at his own civil trial. *See Perotti*, 790 F.3d at 721; *United States v. One 1989 23 Ft.*

12

Davidson insists the district court abused its discretion by not issuing the writ in response to his motion. But, at the district court, Davidson never sought a writ of habeas corpus ad testificandum—or habeas relief of any type, for that matter—nor did he cite to 28 U.S.C. § 2241 or any other habeas provision. Most tellingly, his motion did not seek the type of relief that the writ would provide. He asked the district court for "an Order directing that [Davidson] be allowed to attend the trial" and for the court to cover his travel expenses to Buffalo. App'x 75. Yet a writ of habeas corpus ad testificandum would not merely "allow" Davidson's attendance—it would *mandate* it; and travel expenses would not be reimbursed by the court—those costs would be borne by his state custodian, who would be required to bring Davidson to the federal courthouse in Buffalo. *See Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 38-39 (1985) (holding that the custodian named in a writ of habeas corpus ad testificandum must "'bring the party before the judge who granted the writ,'" and there is no authority for a court "to cause third parties who are neither custodians nor parties to the litigation to bear the cost of producing the prisoner in a federal court").[4]

---

*Wellcraft Motor Vessel*, 125 F.3d 842 (1st Cir. 1997) (table); *Latiolais*, 93 F.3d at 208; *Hawkins v. Maynard*, 89 F.3d 850 (10th Cir. 1996) (table); *Hernandez v. Whiting*, 881 F.2d 768, 771-72 (9th Cir. 1989); *Muhammad*, 849 F.2d at 113; *Pollard*, 738 F.2d at 1125; *Jerry v. Francisco*, 632 F.2d 252, 255-56 (3d Cir. 1980); *see also Rivera v. Santirocco*, 814 F.2d 859, 860 (2d Cir. 1987) (noting that the district court issued such a writ).

[4] *See also United States v. Ford*, 550 F.2d 732, 737 (2d Cir. 1977) (noting that a writ of habeas corpus ad testificandum "authorizes a federal court to command a state custodian to turn over a prisoner to federal authority, presumably without delay or the right to disapprove").

No specific terminology was required, but there is a gulf between the relief Davidson sought below and what he now insists the district court should have granted. The district court was not put on notice of a request for the writ, and because Davidson was counseled throughout this period, the district court was not obliged to construe Davidson's requests liberally. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).[5]

Because Davidson did not ask the district court for a writ of habeas corpus ad testificandum either in name or in substance, our review is only for plain error, which must "be invoked with extreme caution in the civil context," meaning only in those circumstances "where an unpreserved error is so serious and flagrant that it goes to the very integrity of the trial." *Pescatore v. Pan Am. World Airways*, 97 F.3d 1, 18 (2d Cir. 1996) (alteration and internal quotation marks omitted). Davidson has not attempted to satisfy this strict standard, nor could he, given that no prior case has held that § 2241(c)(5) applies to parolees, and it is far from "plain" that he was entitled to the writ, *see* Part II, *infra*, or that he suffered prejudicial harm from the failure to issue it, *see* Part III, *infra*.

---

[5] To be sure, at a pre-trial motions hearing, Davidson himself mentioned in passing that in prior trials "a writ of habeas corpus ad testificandum was issued and the authorities got me there." App'x 89. But by that time Davidson's attorneys had already submitted, and the district court had already denied, a request for an order compelling the Parole Board to permit Davidson to travel and for the district court to cover the travel costs. Moreover, Davidson's knowledge of courts having issued this particular writ in the past makes it all the more noteworthy that his counsel never sought such a writ in this case. In any event, as discussed below, we conclude that Davidson was not entitled to the writ even assuming he did seek it. *See* Part II, *infra*.

14

Accordingly, although the district court did have authority to compel Davidson's attendance by issuing a writ of habeas corpus ad testificandum, on this record we see no plain error in the court's failure to do so.

**II**

Even if we were to assume the district court should have construed Davidson's motion as a petition for a writ of habeas corpus ad testificandum, we would still affirm because Davidson failed to demonstrate to the district court that issuing the writ was "necessary." 28 U.S.C. § 2241(c)(5) (authorizing a court to issue the writ for a prisoner when "[i]t is necessary to bring him into court to testify or for trial").

The party seeking a writ of habeas corpus ad testificandum bears the burden of demonstrating necessity. *United States v. Wright*, 63 F.3d 1067, 1071 (11th Cir. 1995); *United States v. Cruz-Jiminez*, 977 F.2d 95, 103 (3d Cir. 1992); *United States v. Smith*, 924 F.2d 889, 896 (9th Cir. 1991).

Davidson failed to show necessity in two different ways: he did not explain to the district court why his physical presence was so important when he was already permitted to appear electronically by video and by phone, nor did he demonstrate that he had diligently pursued other available avenues for receiving permission to travel to Buffalo.

**A**

Some courts have developed lists of factors to consider when deciding whether a prisoner's physical presence is "necessary" at his own civil trial—including whether the case will be tried to a jury or

15

to the bench, the importance of the prisoner's testimony, whether substitutes are available for that testimony, whether the trial could be postponed, and whether there are security or cost concerns in bringing the prisoner to the courthouse. *See, e.g.*, *Perotti*, 790 F.3d at 721; *Pollard*, 738 F.2d at 1125.

We need not provide an exhaustive list here. Davidson himself recognized that his physical presence would not be necessary; indeed, he repeatedly said he was "willing to attend the trial by video." App'x 75; *see also* App'x 91, 97. Physical presence at a civil bench trial is not "necessary" for purposes of 28 U.S.C. § 2241(c)(5) when remote electronic participation is available, at least in the absence of a showing to the contrary by the party seeking the writ. Davidson's willingness to attend the entire trial by remote video confirms that he could not make such a showing here.

Although Davidson was ultimately unable to appear by remote video for the entire trial, the district court still granted him accommodations that confirmed his physical presence was not necessary. The court permitted Davidson to testify via live video transmission for one day with his attorney by his side, then allowed Davidson "to listen by telephone to the rest of the bench trial and then communicate with his counsel by telephone during breaks." App'x 37. Being physically present might have provided some incremental benefit, but Davidson failed to explain to the district court why taking the additional step of compelling his physical presence was so important that it was "necessary" for a fair trial. *See, e.g.*, *Pollard*, 738 F.2d at 1125 (holding that issuing a writ of habeas corpus ad testificandum was unnecessary because the plaintiff "was represented by competent counsel and testified by deposition").

16

Davidson's failure to demonstrate necessity was especially problematic because issuing a writ of habeas corpus ad testificandum is an "extraordinary measure" that should be taken only when alternatives are insufficient:

> As compliance with writs of habeas corpus ad testificandum may be very costly, the district courts should consider alternatives to reduce the burdens compliance imposes, including: using a prisoner's deposition in place of his trial testimony, arranging the trial schedule to reduce the amount of time a prisoner must be away from his place of confinement, and, in some cases, taking testimony at the prison, or transferring the place of trial to the federal courthouse nearest the state prison.

*Rivera*, 814 F.2d at 863, 864 n.8 (italics omitted). Careful consideration of alternatives is especially important in a case involving a witness on parole. In such a case, a writ of habeas corpus ad testificandum requires a state officer to place new restrictions on the parolee's liberty by transporting and physically producing the parolee in federal court.

Given that he could participate electronically, Davidson failed to demonstrate that his physical presence at his civil trial was "necessary," and accordingly he was not entitled to a writ of habeas corpus ad testificandum.

**B**

Issuing the writ was not "necessary" for another reason: the record does not establish that Davidson had fully and diligently pursued other available avenues for obtaining authorization to come to Buffalo. If he had sought such relief but been rejected, he could then

17

argue to the district court that issuing a writ of habeas corpus ad testificandum was "necessary" to ensure his physical presence at trial.

But as the record stands, it is not clear that Davidson or his counsel actually submitted a proper request to parole officials and, if so, whether that request was ignored or rejected. Davidson claims he diligently pursued permission from parole officials, but the record does not establish that. Instead, it indicates that he was dilatory in seeking approval and perhaps even thwarted his own counsel's attempts to do so. At the May 3, 2017, hearing, Davidson's attorney said, "We have asked Mr. Davidson to take the steps necessary with his parole officer to have permission to come up here for the trial, and that has yet to happen. We have written the parole officer. I haven't had any response. But I'm—we've encouraged Mr. Davidson over and over again to get that permission." App'x 46-47. On May 23, 2017, Davidson's counsel filed a motion stating: "I have been trying for over six months to have my client obtain permission from New York State Parole to attend the trial in person and also to obtain housing at a State Parole Halfway House locally during the trial. I have had no success to date. My client has not obtained permission to attend the trial from New York State Parole." App'x 73 (paragraph numbers omitted). The attorney even "contacted [Davidson's] supervisory Parole Officer by email to request his assistance," but Davidson himself "wrote a letter to his supervisory Parole Officer telling him to ignore [his attorney's] email and claiming that [the attorney] had made false statements to the Parole Officer." App'x 74.

Given this incomplete picture presented by Davidson and his counsel—which is all the district court had before it regarding Davidson's attempts to obtain approval from parole officials—the record is vague as to whether parole officials had actually denied

18

permission to come to Buffalo, or instead whether Davidson had not properly requested and pursued permission. Davidson never submitted any documentation indicating that his request had actually been denied, and the district court noted that Davidson had failed to submit even basic information about the terms of his parole, including "what the protocol is with respect to an individual seeking permission to travel." App'x 83. Nor did Davidson make any showing to the district court about whether a New York state court could modify his terms of parole to allow him to travel to the trial, and, if so, whether he had pursued such relief. In such circumstances, Davidson did not satisfy his burden of showing that it was "necessary" to issue a writ of habeas corpus ad testificandum mandating that his state custodian bring him to Buffalo.

Because Davidson and his counsel did not demonstrate that they had fully pursued available alternatives for obtaining permission for Davidson to travel to Buffalo, issuing a writ of habeas corpus ad testificandum was not "necessary."

* * *

For these reasons, even assuming Davidson's request to the district court is construed as a petition for a writ of habeas corpus ad testificandum, the record confirms that Davidson failed to demonstrate the necessity of issuing such a writ, as required by 28 U.S.C. § 2241(c)(5).[6]

---

[6] Davidson alternatively argues that the district court erred by failing to conduct a hearing to ask parole officials about the status of his request for permission to travel to Buffalo. He sought that relief on the opening day of trial. Davidson provides no authority requiring a district court to hold a hearing before denying a request for a writ of habeas corpus ad

19

Even if the district court should have issued a writ of habeas corpus ad testificandum and compelled Davidson's attendance at his own civil trial, we would still affirm because the court's failure to do so was harmless.

A district court's failure to issue a writ of habeas corpus ad testificandum in a civil trial is harmless unless the witness's physical "presence would have substantially affected the outcome of [the] trial." *Pollard*, 738 F.2d at 1125; *see also Bailey v. Blaine*, 183 F. App'x 220, 223 (3d Cir. 2006) ("Although Brown and Byrd's proffered testimony appears to be relevant, our review of the trial transcript indicates that it would not have affected the outcome of the trial and that, therefore, the issuance of a writ of habeas corpus ad testificandum was not required."). Davidson fails to satisfy this standard. He testified via video without issue and with his attorney by his side, meaning the factfinder could see Davidson and make a credibility determination. Davidson also listened by phone to the remaining witnesses at trial. It is true that he missed portions of Bennett's and West's testimony during the defendants' case because of a "problem at [Davidson's] end with the phone." App'x 360. Davidson's counsel did not object to proceeding with these witnesses,

---

testificandum. In any event, we find no reversible error given that it was Davidson's burden to demonstrate necessity before the trial; it was not the burden of parole officials to disprove necessity in a separate hearing sought after the trial was already underway. *See United States v. Rinchack*, 820 F.2d 1557, 1568 (11th Cir. 1987) ("[A] district court may refuse to issue a writ of habeas corpus ad testificandum solely on the grounds that the petition is untimely.") (italics omitted). Furthermore, we find any error to be harmless. *See* Part III, *infra*.

and Davidson was able to connect with his counsel and discuss strategy before Bennett's cross-examination was finished, as well as before West's recross-examination, for which the district court gave Davidson's attorney additional leeway on the scope of questioning in order to accommodate Davidson's input to his counsel.

Davidson was also able to talk privately by phone with his counsel regarding the other defense witnesses before each witness was excused. Davidson does not identify any topic, question, or strategy he would have asked about or pursued differently if he had been physically present in Buffalo rather than on the phone in New York City. The full transcripts are now available, and he could review those records and point to testimony he missed that was so important that his physical absence from the courtroom at that time somehow affected the outcome of the trial. But he offers no such showing, even though the government's argument on appeal centers on harmlessness.

Without any showing that the outcome of the trial was different as a result of his physical absence, Davidson cannot demonstrate harmful error in the district court's failure to issue a writ of habeas corpus ad testificandum.

## CONCLUSION

Davidson had no constitutional right to attend his own civil trial, but the district court had authority and discretion to issue a writ of habeas corpus ad testificandum to compel Davidson's physical presence. Yet Davidson did not seek such relief before the district court, and there was no plain error in the court's failure to issue the writ. Even if Davidson had sought the writ, he still failed to demonstrate to the district court that issuing the writ was

"necessary," and even if Davidson had done so, there was no harmful error in the district court's failure to issue the writ. Accordingly, we **AFFIRM** the district court's judgment.